SWAN LAKE CONSOLIDATED SCHOOL DISTRICT, appellant, v. CONSOLIDATED SCHOOL DISTRICT OF DOLLIVER et al., appellees.

No. 48197.

(Reported in 58 N.W.2d 349)

1270

MAY 5, 1953.

REHEARING DENIED SEPTEMBER 25, 1953.

Robt. F. Culver and Kelly & Spies, all of Emmetsburg, for appellant.

Wm. O. Anderson, of Estherville, for appellees.

THOMPSON, J.—On September 26, 1951, plaintiff filed its petition in equity against the defendant, Consolidated School District of Dolliver, and certain others who are made parties only because of their official positions. The controversy is between the plaintiff and the Dolliver district, which will be referred to as the defendant.

Plaintiff's petition alleged that it is an independent consolidated school district, organized and existing under the provisions of chapter 276 of the Code of 1950, and that the defendant is likewise organized and existing under the same statutes. Sections 2, 3 and 11 in Swan Lake Township, Emmet County, are alleged to be a part of the territory comprising the plaintiff-

district. Defendant is attempting to alter its boundaries to include said three sections, and on August 23, 1951, an election was held under the provisions of chapter 274, Code of 1950, to effect this change. Said election and all proceedings and attempts on the part of the defendant are illegal and void in that the provisions of chapter 276 were not followed, but only those of chapter 274. Defendant is interfering with the operation of plaintiff-district by making claim to said sections and to the revenue derived therefrom; by operating its school buses through said territory and conveying pupils to the school in defendant-district; and by notifying the county superintendent of the purported change in boundaries and claiming the inclusion of said territory and the tax benefits therefrom. The prayer is that it be adjudicated the said three sections are a part of plaintiff-district and all proceedings taken by defendant to alter its boundaries to include them are void. It is also prayed that defendant be enjoined from claiming the disputed territory and from interfering with the operations of plaintiff with reference thereto and from claiming tax benefits therefrom. There is also a prayer for general equitable relief.

The material parts of defendant's answer are that it admits the three sections were a part of plaintiff-district, but says they are now a part of defendant's territory; admits the formation of plaintiff and defendant, and their existence, under the provisions of chapter 276; that no proceedings have been taken to annex the territory under chapter 276, but alleges they were had under chapter 274, specifically under sections 274.23 and 274.24.

On April 8, 1952, at a pretrial conference, it was stipulated that it should be considered "plaintiff has, on this day, filed an additional petition in quo warranto, including all the statutory allegations and including the allegations of fact as set forth in the original petition herein. It shall be considered that such allegations are admitted by the defendant to the same extent as admissions are made in his original answer herein and as amplified by this pretrial procedure. In addition, it shall be considered that the defendant school district further pleads that the action in quo warranto is barred by the provisions of Code section

274.4. By reply (if reply is necessary) plaintiff denies the provisions of that section apply as a defense, either in law or in fact. The action in quo warranto shall then be considered as consolidated, for the purposes of trial, with the equity action."

The case was submitted on the pleadings and the record as made at the pretrial conference. It is apparent that there are law questions only. On May 10, 1952, the trial court entered its decree dismissing each of plaintiff's petitions. The court found in its conclusions of law that defendant should have proceeded under chapter 276 rather than 274, but that plaintiff's action in equity could not be maintained because it was a collateral attack on the validity of the defendant-district; the attack should have been direct by quo warranto; plaintiff's action in quo warranto was not filed until more than six months after the exercise of the franchises and privileges of the defendant-district had commenced, and so was barred by section 274.4. There are thus three questions raised upon this appeal: First, whether defendant adopted the proper proceedings for incorporating the disputed territory; second, whether plaintiff's action in equity was proper; and third, whether, if equity was not the proper remedy, the quo warranto action was barred by section 274.4. We shall discuss them in order.

I. We have recently held definitely in Cook v. Consolidated School District of Truro, 240 Iowa 744, 38 N.W.2d 265, under identical facts, that the provisions of chapter 276 are exclusive when additional territory is to be incorporated in a consolidated school district. This means, of course, that chapter 274 is not applicable to such proceedings. It was urged there, as here, that section 274.2 made the procedures provided for by chapter 274 applicable to consolidated districts. The material part of this section is this: "The provisions of law relative to common schools shall apply alike to all districts, *except when otherwise clearly stated * * *.*" (Italics ours.) We pointed out in the Truro case; supra, how and why it is "clearly stated" that organizational procedures called for by chapter 276 are exclusive.

The defendant-appellee does not seriously contend that the Truro case does not hold flatly against it upon the procedural

question it adopted in incorporating the three additional sections, but it asserts that the holding of this case is wrong and asks that we overrule it. The principles involved are so thoroughly analyzed and so cogently expressed by Justice Bliss in the Truro case that any restatement of them would be an idle gesture, and an attempt to improve upon them would be inappropriate. It may be proper, however, to point out that we are here dealing with consolidated districts. Chapter 276 provides the manner for organizing them, and no one would contend that it could be done originally except as specified therein. But those who think the holding of the Truro case to be in error as applied to enlargement of a consolidated district believe there is at least an alternative method provided by chapter 274 for taking in additional territory. They overlook the fundamental principle that when new territory is added to a consolidated district there is effected a new consolidation. It is not a matter of adding new areas to an old consolidation. These new areas have always themselves been part of some other district; there is no place or territory in the state which is not at any given time incorporated in some school district. When it is desired to consolidate, and thus form a consolidated district, the procedure is provided by chapter 276; and when this is done we have the consolidated district. "A consolidated district is one which is made up by the consolidation of two or more adjacent common or ordinary school districts or parts of districts or territory." Wall v. State ex rel. McConnell, 187 Okla. 497, 499, 103 P.2d 925, 926.

We have said, in several cases preceding the Truro case, that adding new territory to a present consolidated district makes a new consolidated district. In Arnold v. Consolidated Independent School District, 173 Iowa 199, 155 N.W. 278, the right of a district once consolidated to take in further territory and so to make a new consolidation was at issue. This court said, at page 200 of 173 Iowa, that the issue was "whether * * * there can be a further consolidation in said territory * * * bringing in additional territory *and thus forming a new consolidated school district.*" (Italics ours.) It appeared that after the first consolidation, completed in May 1914, under the provisions of section 2794-a, Code Supplement of 1913 (now forming a part of

sections 276.1 and 276.2, Code of 1950), in the same month another petition was presented for further consolidation. Another election was held on June 13, 1914, *"the result of which was that a new consolidated district was formed, including additional territory to that included in the first consolidated district * * *."* (Italics ours.)

In State ex rel. Kirchgatter v. Thompson, 190 Iowa 1160, 1166, 181 N.W. 434, 437, we said: "In Arnold v. Consolidated Ind. Sch. Dist., 173 Iowa 199 [155 N.W. 278], we held that a school district consolidated under the provisions of the statute *might again avail itself of the same provisions of the law, and effect a further or second consolidation.* There can be no doubt of the right of a consolidated district to reconsolidate and enlarge its territory, provided that the proceedings are in accordance with the statute." (Italics ours.)

In State ex rel. Stinman v. Spellman, 191 Iowa 1181, 1183, 1184, 183 N.W. 577, is this: "Whenever it is proposed to include an area of 16 sections or more, section 2794-a [now part of chapter 276], as amended, is also applicable, *and is the proper procedure* if it is the purpose to organize and conduct a central school in rural territory and transport the pupils. Technically, this is not the union of two districts, but the organization of a new corporation for the purpose of conducting a central school as a consolidated district * * *." (Italics ours.)

In the case of Arnold v. Consolidated Independent School District, supra, it is held that a consolidated independent school district *may be included with other territory to organize a new district under the provisions of section 2794-a.*

The effect of the foregoing authorities is that a presently consolidated district may take in additional territory, and when it does so a new consolidated district is formed. Logic and reason also sustain this view. It follows, of course, that the only legal method for organizing the new consolidated district is that prescribed by chapter 276.

It should not be necessary to labor the point further, or at all. The Truro case opinion was filed on June 14, 1949. It was concurred in by all the Justices then comprising the court. Justice Bliss, the writer of the opinion, and six Justices who

1276

concurred are still members of this court. The opinion is quite evidently the result of the most painstaking analysis and research. It is just as evidently not the result of haphazard or illogical thinking, nor is its holding in any manner obscure. The writer of the opinion and those who concurred must be presumed to have acted advisedly.

 Under such circumstances this interpretation became the settled law of the state. It should remain settled unless it appears clearly that the result is not in accord with logic and precedent, and that mischief will result therefrom. No sufficient reason why it should unanimously have been held sound less than four years ago and now be found to be unsound has been advanced. It is true the law should not be, and is not, static; it should grow and develop with economic, political and cultural conditions which surround it. This, however, does not mean that it should not generally be definite and settled. The rule of stare decisis has its basis in something stronger than the thought that the courts should follow hidebound precedent without regard to justice or equity. It derives from the consideration that when the courts have fully and fairly considered a proposition and have decided it, only the most pressing reasons should require, or in fact even permit, an opposite holding. Lawyers and clients have a right to know what the law is, and to order their affairs accordingly. Some cynic has said that "consistency is the vice of little minds." If we now accede to the urging of the defendant here and overrule the Truro case, we will surely have demonstrated that we are free from any such taint.

Cook v. Consolidated School District of Truro, supra, is consistent with and follows all of our previous holdings, except for Chambers v. Housel, 211 Iowa 314, 233 N.W. 502, which is in part distinguished, and in part held unsound. The Truro case had established the law of Iowa more than two years before the election was held in the case at bar. The learned trial court, after referring to the Chambers case and the fact that the defendant Dolliver district had followed the procedure outlined by chapter 274, which seemed to have been approved by that case, remarked that the district was warranted in so doing. The basis for this statement is not clear since the Truro case decision was

there for all to read for two years before the defendant acted. It ignored the rule of stare decisis and now asks us to validate its defiance by overruling our latest decision.

The Truro case covers twenty-seven pages of Volume 240 of the Iowa Reports. It discusses all questions raised on the present appeal, analyzes the statutes and traces their history, and answers all arguments for a contrary holding. All judges then sitting concurred without reservation. There is no indication of any dissenting thought. It appears to be, as indeed it must have been, the thoroughly considered judgment of this court. Since then, in the short time that has elapsed, no statutes have been changed, no new ones added, no old ones repealed. It seems to be peculiarly a case upon which the bar and any others interested were entitled to rely as fixing the law upon intricate and difficult legal propositions. We think it should be adhered to.

██ ██ II. It is evident that so far as the proposition discussed in Division I is concerned, and if that were the only question in the case, the plaintiff would be entitled to prevail. But the trial court held plaintiff's action in equity would not lie, and that its quo warranto petition was filed too late. That quo warranto is the exclusive remedy for testing the legality of the organization of a school corporation is well settled. Cook v. Consolidated School District of Truro, supra; Nelson v. Consolidated Independent School District of Troy Mills, 181 Iowa 424, 164 N.W. 874. The plaintiff does not dispute this, but it says that it is not so testing. It concedes the legal organization of the defendant-district; but with one important exception. It does not concede the legal organization of the new district as made by the consolidation of the three sections in dispute with the former Dolliver district. It seems evident that its equitable action seeks to challenge the legal organization of the new district. It has no case in equity if the new district is legally organized. It must show the illegality of the new organization before it can be entitled to the relief asked. Plaintiff here finds itself ground between the upper and nether millstones. It contends, correctly we think, that the inclusion of additional territory in a formerly consolidated district in effect makes a new

consolidated district. To support its petition in equity it must therefore contend that the defendant-district when it claims to include the new areas is improperly organized. We agree with the trial court that an equity action does not lie, and constitutes an unallowable collateral attack.

III. Following Code section 274.4 the district court held that plaintiff's action in quo warranto was barred because not brought within six months from the time defendant began to exercise the franchises and privileges of a district. We set out herewith sections 274.4 and 274.5, the latter laying down a rule for proving the time when the school corporation was first duly organized and commenced to exercise its franchises:

"No action shall be brought questioning the legality of the organization of any school district in this state after the exercise of the franchises and privileges of a district for the term of six months." Section 274.4.

"Every school corporation shall, for the purpose of section 274.4, be deemed duly organized and to have commenced the exercise of its franchises and privileges when the president of the board of directors has been elected; and the record book of such corporation duly certified by the acting secretary thereof, showing such election and the time thereof, shall be prima-facie evidence of such facts." Section 274.5.

██ It will be noted that the election, under the provisions of chapter 274, at which a majority of the electors voted for the consolidation, was held on August 23, 1951. Plaintiff's action in equity was commenced on September 26, 1951. Its petition in quo warranto was considered as filed on April 8, 1952. The latter date is more than six months after the election and likewise after the commencement of the equitable action. Plaintiff urges that there is no showing as to when the new district commenced to "exercise the franchises and privileges of a district"; and, under well-established rules that statutes of limitation must be strictly proven, it was error for the trial court to hold that its quo warranto action was barred.. There is much argument between the litigants as to whether section 274.5 lays down an exclusive rule for proving the commence-

ment of the organization and exercise of franchises. For reasons hereinafter set out we conclude that we need not decide this proposition. Plaintiff also contends that the defense of the statute of limitations must be specifically pleaded, rule 101, Rules of Civil Procedure, and that the burden is upon the one alleging it to prove it. These points are well taken. It is, however, a sufficient answer to the matter of pleading to point out that at the pretrial conference, when it was agreed plaintiff should be considered as having on that date—April 8, 1952—filed its petition in quo warranto, it was also stipulated "it shall be considered that the defendant school district further pleads that the action in quo warranto is barred by the provisions of Code section 274.4."

The question of the sufficiency of proof to sustain the trial court's finding that the quo warranto action was barred is more difficult. There is no testimony or documentary evidence of the election of a president of the board of directors, which section 274.5 makes prima-facie evidence of the exercise of franchises and privileges. But plaintiff's petition avers defendant is an independent consolidated school district organized and operating under chapter 276 of the 1950 Code; that it is making claim to the disputed territory and to the tax revenues therefrom; is operating its school buses through the area, soliciting and conveying pupils to its school; and notifying the county superintendent of schools of the change in boundaries. These things show the organization of the defendant-corporation and, we think, that it is exercising its franchises and privileges. Even if it be held that proof of the election of a president of the board be essential (which may be doubted), there is a fair inference from the pleadings and the stipulations at the pretrial conference that the board of directors of defendant is duly organized. A school corporation, like any other, acts through its board of directors. 78 C. J. S., Schools and School Districts, section 120, pages 905, 906; Beck v. Independent Consolidated School District, 213 Iowa 1282, 1284, ·241 N.W. 427. We will presume that the defendant-district, in performing the acts complained of, was acting through a duly elected and organized

1280

board of directors, the only body through which it could operate. There is neither pleading nor proof to the contrary.

 It is plaintiff's contention that it is not challenging the organization of defendant as it stood before it attempted to consolidate with the new territory, but only the acts of the old corporation in asserting jurisdiction over the area which it claims to have added by what plaintiff thinks is illegal process. But we think it was the intention of the legislature to require such challenges to be made in the time specified in section 274.4. Defendant was at least claiming the new territory as a part of its organization. We agree with the trial court that plaintiff's action was barred.—Affirmed.

SMITH, C. J., and BLISS, GARFIELD and LARSON, JJ., concur.

HAYS, J., concurs specially, and OLIVER, WENNERSTRUM and MULRONEY, JJ., join.

HAYS, J. (specially concurring)—While I agree with the result reached in the majority opinion, I cannot agree with the legal principle announced therein.

Fundamentally, this appeal presents but one proposition, a legal one. The question is: Where an existing independent consolidated school district desires to extend the limits of, or add territory to, such district, as provided for in section 274.27, Code of 1950, does chapter 276, Code of 1950, provide the sole procedure for attaining such extension? The majority opinion says yes. With this I must respectfully disagree.

As stated in the majority opinion, the trial court reluctantly followed our recent decision in Cook v. Consolidated School District of Truro, 240 Iowa 744, 38 N.W.2d 265, wherein such a rule is pronounced. Counsel for appellee, in brief and argument, strenuously insist that such decision is not sound and ask for a reconsideration of the question involved. True, as stated in the majority opinion, all members of the court, as now constituted, who were members of the court at the time of the Truro decision, concurred therein, including myself. True, as stated therein, this court recognizes and adopts the rule of "stare decisis", and we should ignore that rule only after very careful consideration

of all factors involved. As stated in Helvering v. Hallock, 309 U. S. 106, 119, 60 S. Ct. 444, 451, 84 L. Ed. 604, 125 A. L. R. 1368, 1375:

"We recognize that stare decisis embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience."

I think the Truro decision is unsound, and even at the expense of demonstrating that I am free of the taint that "consistency is the vice of little minds", I think the Truro case should be reappraised.

At page 752 of 240 Iowa, page 269 of 38 N.W.2d, it is said: "It was the conclusion of the able trial court that in the enlargement or extension of an existing or old school district by a vote of the electors, whether the district be an independent city, town, or village school corporation, the inevitable result with either type of school was the formation of a new school corporation, and that the proper statutory steps for forming or establishing a school corporation by vote of the electors should be followed." At page 753 of 240 Iowa, page 270 of 38 N.W.2d, it is further stated: "The conclusion of the trial court is sound and the grounds on which it is based are reasonable and logical." In a nutshell—the annexation of territory by an existing school corporation of necessity creates a new school corporation. If this premise be sound, then the Truro decision is sound, as is also the majority opinion in the instant case for, admittedly, only by following the provisions of chapter 276, Code of 1950, may a *new* consolidated school district be formed.

Section 274.27, Code of 1950, provides: "Whenever it is proposed to extend the limits of, or add territory to, an *existing independent* city, town, or *consolidated* district, the voters residing *within the proposed extension or addition* and *outside the existing independent district,* shall vote separately upon the

proposition. The proposition must be approved by a majority of the voters voting thereon in each of such territories." Under section 4.1(2), Code of 1950, "words and phrases shall be construed according to the context and the approved usage of the language." Technical words and others as may require a peculiar meaning shall be so construed. Section 274.27 says—to "extend the limits of"; to "add territory to". There is nothing technical about the words "extend" or "add to". According to Webster, "extend" means "to enlarge, as a surface or volume; to expand; spread; amplify." By the same authority, "add" means "to make an addition; to augment; increase" and is synonymous with "annex". As said in Maumee School Twp. v. School, 159 Ind. 423, 425, 65 N.E. 285, 286: "The term 'annex' means to add or unite to something already existing." In Black's Law Dictionary "annexation" is thus defined:

"The act of attaching, adding, joining, or uniting one thing to another; generally spoken of the connection of a smaller or subordinate thing with a larger or principal thing. * * *. So the incorporation of newly-acquired territory into the national domain, as an integral part thereof, is called 'annexation', as in the case of the addition of Texas to the United States."

Surely it cannot be contended that the annexation of Texas to the United States constituted the formation or organization of a new United States. In Independent School District v. Jones, 142 Iowa 8, 120 N.W. 315, it is said that to extend boundaries refers to changing boundaries of existing districts and not to their creation. See also Whitmire v. Cass, 213 S. C. 230, 49 S.E.2d 1; Middlesex & S. Traction Co. v. Metlar, 70 N. J. L. 98, 56 A. 142.

Section 274.16, Code of 1950, provides for changing the boundary lines of contiguous school corporations by concurrent action of the respective boards of directors. Section 274.16 contemplates two possible things: (1) Merely a change of boundary lines; (2) the absorption of one district by another district. Section 274.17 recognizes these two possibilities by referring to "change of boundary lines" and "consolidation of districts" with different provisions relative to the then boards of directors. In

State ex rel. Stinman v. Spellman, 191 Iowa 1181, 183 N.W. 577, we held that boundaries of school corporations, including consolidated, might be changed under what is now section 274.16. The majority opinion quotes from this case where it is said that section 2794-a (now part of chapter 276) is also applicable and is proper procedure *if* it is the purpose to organize and conduct a central school, in other words, to unite two rural districts by forming a consolidated school. I find no fault with that statement. In Arnold v. Consolidated Independent Sch. Dist., 173 Iowa 199, 202, 155 N.W. 278, 279, we said: "We think it would not do to hold that the only change of boundaries of a consolidated district must be under the provisions of Section 2793 or Section 2793-a, Code Supp., 1907 [now included in chapter 274, Code of 1950]." We further said that a consolidated district formed under section 2794-a, Code Supplement of 1913 (chapter 276, Code of 1950), might *again* avail itself of the same provisions of law and effect a further or second consolidation. In Chambers v. Housel, 211 Iowa 314, 233 N.W. 502, we held that section 4141, Code of 1927 (now 274.23, Code of 1950), is available to a *consolidated* school district which wishes to extend its boundaries by adding thereto a part of the territory of an adjoining consolidated school district; that section 4133, Code of 1927 (section 274.16, Code of 1950), is not the exclusive remedy. See also Independent School Dist. v. Consolidated School Dist., 227 Iowa 707, 288 N.W. 920.

While some of the cases cited by the majority opinion, as well as herein, do not concern consolidated districts, they all deal with annexation of territory and hold that sections 274.24, 274.23 and 274.16, so far as applicable, are proper. Section 274.2 makes the provisions relative to common schools applicable to *all* districts "except when otherwise clearly stated, and the powers given to one form of corporation, or to a board in one kind of corporation, shall be exercised by the other in the same manner, as nearly as practicable." We have held many times that sections 274.16, 274.23 and 274.24 are available to school districts which are not consolidated, and in State ex rel. Stinman v. Spellman, Arnold v. Consolidated Ind. Sch. Dist., and Chambers v. Housel, all supra, that they applied to consolidated

districts. There is nothing in chapter 276, that I can find, even hinting that such sections do not apply to consolidated districts, and certainly there is nothing therein "which clearly states otherwise."

In my judgment, while chapter 276 is available to a consolidated district acting under section 274.27, such chapter is not the exclusive remedy. This, as I read our decisions, has been the recognized rule up to the time of the Truro decision. The provisions of chapter 274, relative to this question, are more simple and easy to comply with than are those of chapter 276. The majority opinion says we should not disturb such a recent pronouncement as the Truro case. If it states an erroneous legal principle the sooner it is corrected, the better. I would overrule the Truro decision in so far as it holds that chapter 276 is the exclusive remedy available. I would hold it to be merely inclusive.

As to quo warranto being the exclusive remedy for raising the question at issue here—The majority opinion deems the issue to be the questioning of the legal corporate status of the appellee. I deem the issue to be whether the appellee is exercising powers not conferred by law. Both questions are recognized under chapter 660, Code of 1950, as a basis for an action in the nature of Quo Warranto. In Walling v. Iowa Mutual Liability Ins. Co., 228 Iowa 503, 511, 292 N.W. 157, we quote from 51 C. J. 314 as follows: " 'In the absence of a valid statute conferring equitable jurisdiction, there is no concurrent remedy in equity when quo warranto is available and affords an adequate remedy.' " In State ex rel. Phillips v. Fidelity & Casualty Co., 77 Iowa 648, 651, 42 N.W. 509, 510, we said:

"The allegations of the petition are clearly within the purview of the quoted provisions of the statute, by averring that the defendant, by the making of the several kinds of insurance, has been and is still offending against the laws of the state. If thus offending, it must certainly be exercising powers not conferred by law."

The status of the appellant to bring the action is not questioned in the district court nor in the majority opinion and I

assume that this issue was taken care of at the pretrial conference. See State v. Winneshiek Co-Op. Burial Assn., 234 Iowa 1196, 15 N.W.2d 367. I agree that quo warranto rather than equity proceedings is the proper remedy.

I would affirm the judgment of the trial court on the theory that the procedure adopted by appellee was proper and that the annexation was perfected.

OLIVER, WENNERSTRUM and MULRONEY, JJ., join in this special concurrence.