GLEN SMAHA et al., appellants, v. ERNEST P. SIMMONS, superintendent of schools, and BOARD OF EDUCATION, appellees.

No. 48321.

(Reported in 60 N.W.2d 100)

164

SEPTEMBER 22, 1953.

REHEARING DENIED NOVEMBER 20, 1953.

Mote & Wilson and Haupert & Robertson, all of Marshall-town, for appellants.

W. J. Willett and Hyland & Hyland, all of Tama, for appellees.

MULRONEY, J.—On April 7, 1952, there was filed with the Tama County Superintendent of Schools a petition entitled "Petition for Formation of Consolidated Independent School District of Garwin, Iowa." It is admitted the petition was filed under the provisions of section 276.2, Code, 1950, and it is not argued it was insufficient under said section. Thereafter the matter proceeded under subsequent provisions of chapter 276, Code, 1950. Notice of election was published in the Garwin Sun and the election return showed a majority vote in favor of the establishment of the consolidated district..

On June 26, 1952, six individuals and one independent school district brought action in certiorari in the Tama County District Court against the Tama County Superintendent of Schools and Board of Education alleging the defendants were proceeding illegally with the establishment of the Consolidated Independent School District of Garwin, Iowa. The main ground of illegality asserted is that certain provisions of chapter 276, Code, 1950, which were followed in the establishment procedure, were repealed by implication, and certain provisions of chapter 275, as amended by chapter 94, Acts of the Fifty-fourth General Assembly were controlling and were not observed. There was one other ground asserted: That the Garwin Sun was not a newspaper within the provisions of section 618.3, Code, 1950, in that it had not been, as said statute provides, "established, published regularly and mailed through the post office of current entry for more than two years." The trial court correctly held the evidence did not establish the Garwin Sun was not a qualified newspaper under section 618.3, Code, 1950.

Upon the main contention the trial court held the election provisions of chapter 276, Code, 1950, were not repealed by the later amendments to chapter 275, Code, 1950; that the procedure for the establishment of a consolidated district provided in chapter 276, Code, 1950, was available for such an establishment initiated by the people involved and carried out by their majority vote; and the procedural provisions of chapter 276 were sub-

stantially followed. Upon the above findings and conclusions the trial court annulled the writ.

I. Chapter 276, Code, 1950, has a long history. Its roots lie back in the session laws of more than thirty-five years ago. See section 2794-a, Supplemental Supplement 1915, chapter 432, Acts of the 37th G.A. (1917). It has often been amended but basically it has always provided for the creation of a new consolidated school district upon the petition filed by a certain number of voters asking for the establishment of the described territory as an independent district for the purpose of maintaining a consolidated school. The chapter provides a complete procedure for the formation of the consolidated school district, beginning with the number of signers on the petition, what the petition must contain, the course to be followed by objectors, measures for calling and conducting a special election for submission of the proposal of the petition to the voters, and the method to be pursued to effect the establishment of the new district in the event a favorable vote for the establishment is returned.

In 1945 the legislature (chapter 128, Acts of the 51st G. A.) adopted what is now chapter 275. It supplied a new method of reorganization of districts by unions and mergers. We recognize that in all of these school laws the legislature is using such terms as reorganization, consolidation and merger or union of districts in much the same sense: the uniting of smaller areas into one. So chapter 275 provided for the creation of what amounts to a consolidated district without petitions. It allowed the county board of education, after study, surveys and hearings, to submit a plan of reorganization to the voters. It was specifically provided in this Act that this new plan was to be "supplemental to the existing provisions of law for the promotion of districts and the changing of boundaries of districts." Section 275.11, Code, 1950. As here used the term "supplemental" means "in addition to" without changing the "existing provisions" in chapter 276 and other statutes for the "promotion of districts and the changing of boundaries of districts." Lost Creek School Twp. v. York, 215 Ind. 636, 21 N.E.2d 58, 127 A. L. R. 1287. It is enough to state that the method of submitting the plan to the

voters under chapter 275 was somewhat different from the provisions of chapter 276 which governed the submission of the proposal of the petition.

From the above we see that chapter 275 as originally adopted stood with all other provisions of the Code setting out procedure for district reorganization by combining, merging or changing of boundaries, or for formation of consolidated school districts. It is clear that chapter 275 as originally adopted in 1945 governed the official plan method of creating a new district and chapter 276 still governed the people's petition method of creating a new district.

In 1947 the legislature (chapter 150, Acts of the 52d G.A.) amended various sections of chapter 275, not here material, but added another section to the chapter, as follows (section 4, chapter 150, Acts 52d G. A.) : "From the effective date of this act until June 30, 1953, no new school districts may be formed, nor shall any school district boundary be changed either by consolidation, merger or otherwise under the laws of this state, except under the provisions of this chapter."

The above quoted statute was repealed in 1951 by section 3, chapter 94, Acts of the 54th G.A. (effective March 20, 1951). This latter Act states in its title that it is an Act to amend sections 275.3, 275.4 and 275.10, Code, 1950, and to repeal section 4, chapter 150, Acts of the 52d G. A., and to amend certain provisions in chapters 273 and 274, Code, 1950.

The section of said chapter 94 upon which reliance is here placed for the argument of repeal by implication is section 5 which amends the election procedure, or section 275.4 of the 1950 Code. The first sentence of section 275.4 before amendment read as follows: "Upon final approval by the county board of any plan of reorganization, the county board through its executive officer shall, at the next school election, submit same to the qualified electors of the affected districts in the manner provided for in sections 296.4 and 296.5."

The amendment of section 5, chapter 94, Acts of the 54th G.A. (1951) made the above sentence read as follows: "Upon approval by the county board of any plan of reorganization, consolidation or merger, the boards of the affected districts shall, at a special election, submit same to the qualified electors of each

of the affected districts in the manner provided for in sections 296.4 and 296.5.''

Sections 296.4 and 296.5 referred to above provide for published notice of the election once a week for four weeks with the election not less than five nor more than twenty days after the last publication. The special election under chapter 276 is called by the county superintendent on a single published notice.

Appellants argue that the provisions of section 5 of chapter 94, Acts of the 54th G. A., create a conflict with provisions of chapter 276 in that said sections govern where there is "any plan of reorganization, consolidation or merger." The argument is that this provision by the use of the word "any" applies to school consolidations upon petition under chapter 276. There is no doubt a conflict would exist if section 5 is to apply to consolidations under chapter 276 for the latter chapter provides for different procedure in the calling and notice of election. It is just as clear that no conflict at all would result if it was the legislature's intent to confine the application of section 5 to the *plan* method of consolidation under chapter 275.

■    II.   It is almost an understatement to say that repeals by implication are not favored. In Yarn v. City of Des Moines, 243 Iowa 991, 997, 54 N.W.2d 439, 442, we said: "Repeals by implication are not favored by the courts and will not be upheld unless the intent to repeal clearly and unmistakably appears from the language used and such a holding is absolutely necessary. The general rule is that if by any fair and reasonable construction prior and later statutes can be reconciled both shall stand [citing cases]. The rule that repeals by implication are not favored has special application to important public statutes of long standing [citing cases]."

■    III.   It can hardly be said here that the intent to repeal the election procedure in chapter 276 "clearly and unmistakably appears." To begin with, chapter 94 expressly states it is an Act to amend and repeal various laws that are listed by section numbers, and nowhere lists any law in chapter 276. It is hard to draw an implied legislative intent to repeal an unmentioned law from a statute specifying certain numbered statutes that are amended and repealed. As bearing thereon see Bennett v. Green-

walt, 226 Iowa 1113, 286 N.W. 722; Hahn v. Clayton County, 218 Iowa 543, 255 N.W. 695.

IV.   Is there a fair and reasonable construction of section 5 of said chapter 94 that will not result in a repugnancy with the election procedure for petitioned consolidation in chapter 276? We think there is.  Appellants do not pinpoint their argument to the change effected in the first sentence of 275.4 by the amendment, but that seems to be the only basis for argument that the election procedure of chapter 276 was repealed by implication. The amendment is that the election procedure of section 275.4 is to govern after the "approval by the county board of any plan of reorganization, consolidation or merger."  The argument for repeal by implication would be that "any" means "every" and the creation of a consolidated district upon petition under chapter 276 would be within the full sweep of the amendment. But is that necessarily so?  The amendment does not say "any consolidation."  It is "any plan of * * * consolidation."  It must be remembered that chapter 275 has always dealt with an officer initiated *plan* of merger, or reorganization.  It would seem to be a reasonable construction that the legislature intended the election procedure of the amendment to section 275.4 to apply only to every *plan* initiated under that chapter.  Many of the sections in chapter 275 speak of the *plan* which the officials submit while chapter 276 does not use the word.

While it is true "any" means "every", the insertion of the word "plan" before "reorganization, consolidation or merger" indicates the application of the statute is to be limited to the subject matter of the chapter, which is an officially prepared and approved plan.  In the judicial search for the elusive legislative intent it is certainly proper to say, as a general rule, that the legislature had in mind the specific subject matter of the law they were amending.  Here the legislature was amending the election procedure of the officially inspired plan of reorganization.  We hold the application of the amendment is confined to the plan method of reorganization and consolidation, or chapter 275, and that this is a reasonable construction, and therefore no repeal of statutes governing the petition method or chapter 276 results by implication.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.